UNITED STATES PUBLIC INTEREST
RESEARCH GROUP, et al.,
Plaintiffs

v.

ATLANTIC SALMON OF MAINE,
LLC., Defendant

United States Public Interest Research
Group, et al., Plaintiffs

v.

Stolt Sea Farm, Inc., Defendant

Nos. CIV. 00–151–BC, CIV. 00–149–BC.

United States District Court,
D. Maine.

July 25, 2003.

Bruce M. Merrill, Portland, ME, David A. Nicholas, National Environmental Law Center, Boston, MA, Charles C. Caldart, National Environmental Law Center, Seattle, WA, Joseph J. Mann, National Environmental Law Center, Joshua R. Kratka, National Environmental Law Center, Boston, MA, for Plaintiffs.

Jeffrey A. Thaler, Bernstein, Shur, Sawyer, & Nelson, Peter W. Culley, Pierce, Atwood, Elizabeth R. Butler, Pierce, Atwood, Gregory M. Cunningham, Bernstein,

Shur, Sawyer, & Nelson, Portland, ME, for Defendants.

## ORDER DENYING JOINT MOTION BY DEFENDANTS FOR A PARTIAL STAY PENDING APPEAL

GENE CARTER, Senior District Judge. "What was ... solemnly adjudged as a final composition of an historic litigation will not lightly be undone at the suit of the offenders and the composition held for nothing." *United States v. Swift and Co.*, 286 U.S. 106, 120, 52 S.Ct. 460, 76 L.Ed. 999 (1932) (Cardozo, J.).

Before the Court is the Joint Motion of the Defendants in the above actions seeking a partial stay of this Court's Findings of Fact and Conclusions of Law, Memorandum of Decision and Order on Remedial and Injunctive Relief, Order and Injunction, entered in each of these cases on May 28, 2003. Docket Item No. 125.[1] Defendants, by this motion, seek to have stayed, pending the decision on their appeals, paragraphs (3), (5), and (7) of this Court's Order and Injunction entered on May 28, 2003 (Docket Item No. 116) and of the Judgment (Docket Item No. 117) entered the following day. By the motion, Defendants seek to delay implementation of the most salient features of the remedial plan laid down by the Court as the result of two and one-half years of continuous, hard-fought litigation in these cases. If Defendants are successful, they will achieve a "window of time"[2] to deposit a new year-

---

1. The docket entries in these cases are in all significant respects parallel with each other, though the Docket Item Nos. reflected may in some instances vary. For convenience, citation to these numbers to identify papers filed in the two cases will be made only to the docket entries in CV–00–151–B–C.

2. Defendants have implacably sought to establish this "window of time" in which they would be free to insert a new year-class of fish into the waters since the October 2002 trial of the damages and injunctive relief issues in this case. The Court heard, in the course of trial, testimony that it took to indicate that Defendant ASM intended to place fish in the water in the spring of 2003 before the Court could act on the damages and injunctive relief issues and in a way that might conflict with and defeat any remedial plan the Court might impose. The Court asked to be advised by ASM's then counsel if ASM intended to do so. Counsel advised the Court by his letter of January 10, 2003, (Docket Item No. 83) that ASM did intend to stock a new class of fish in the spring of 2003. In consequence thereof, the Court entered on February 13,

class of fish into the water, which will prolong for a period of another two to two and one-half years the violation of the Clean Water Act, adjudicated by the Court to have occurred in this case. The effect of such a stay will be to fully frustrate the implementation of the Court's remedial plan.

The Court of Appeals for the First Circuit has set a standard for the determination of whether a stay of appeal is justified. The Court has in that respect stated:

> To satisfy the standard for the issuance of a stay, the movant must establish that there is a strong likelihood of success on the merits of its appeal; that he will suffer irreparable harm if a stay is not granted; that the harm will outweigh any harm opposing parties will suffer if a stay is granted; and that the public interest would be furthered by the granting of a stay.

2003, its order prohibiting ASM from such conduct (Docket Item No. 84).

Thereafter, ASM sought by motions (Docket Item Nos. 85 and 86) the Court's advice as to how it would react if ASM did insert the new year-class of fish into its pens. The Court responded to ASM's inquiries in a hearing of April 25, 2003, during which ASM's counsel first made reference to ASM's need for "a window of time" in which the next year-class of fish could be placed in pens. *See* Transcript of Hearing of April 25, 2003, and also Opinion and Order Enjoining for Civil Contempt (Docket Item No. 97) at 3–9. The Court explained that its intent in entering the February 13th order "was that the Defendant, ASM, should not put any fish in the coastal waters of Maine without the designated pollution discharge permits required by the Clean Water Act." Transcript of Hearing of April 25, 2003, at 25–28.

ASM then elected to test the Court's resolve by stocking 100,000 smolt in the pens of its wholly owned subsidiary, IAC, in defiance of the Court's expression of its intention regarding the February 13th order. It did so on the artful but transparent basis that ASM was not

*Morgan v. Kerrigan,* 523 F.2d 917, 920 (1st Cir.1975).

The Court is not satisfied, from its intimate knowledge of the entire history of this case and the contents of Defendants' written submissions on the present motion, that Defendants have satisfied any of these criteria.

### 1. A strong likelihood of success on the merits of the appeal.

 The factual predicate for the stay sought by Defendants is the assertion that on June 19, 2003, the BEP adopted a general MPDES permit for salmon aquaculture in Maine. Defendants' Joint Motion at 2. The legal basis for this to require a stay is Defendants' assertion that the Court's Order and Injunction impermissibly overrides the MPDES permit. *Id.* Defendants then attempt to buttress this position by reference to *United States v. Swift and Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), and a line of cases all involved in the actions of its wholly owned subsidiary. That precipitated Plaintiffs' Motion to Hold ASM in Contempt (Docket Item No. 88), which was heard on May 2, 2003, and resulted in ASM being adjudicated to be in civil contempt and in an order requiring the removal of the smolt from IAC's pens (Docket Item No. 97) and Judgment thereon (Docket Item No. 98). ASM followed up on its quest for a "window of time" with a motion to stay the order (Docket Item No. 101), which was denied (Docket Item No. 108). ASM also filed a Motion for Relief From Judgment (Docket Item No. 105) based on nothing more than its naked assertion of its economic well-being. That, too, was denied (Docket Item No. 108). Defendants together now seek again to achieve the elusive "window of time" that will permit them to defeat the full thrust of the result of these proceedings for two to three years more. All they need to do so is a forty-eight-hour "window of time" to achieve that goal. The stay now sought would let the fish "out of the bag," and neither this Court nor any other can repair the resulting damage short of an order that all of the fish so placed be removed, an exercise in which this Court and ASM have already once been engaged.

having to do with whether, and, if so, under what circumstances and to what extent, a court can, *on a petition to modify,* change a prior *consent* decree because of a change in circumstances. The bottom line of any significance to the present line of inquiry of *Swift* is that it acknowledges that with respect to a decree that "has been entered after litigation," as opposed to a consent decree, the court has the power to revoke or modify its mandate, "if satisfied that what it *has been doing has been turned through changing circumstances into an instrument of wrong.*" *Id.* at 114–15, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (emphasis added).

Here the Court has no perception whatever that its remedial plan has been turned, since its entry, into "an instrument of wrong." The wrong involved here is Defendants' consistent and egregious violation of the Clean Water Act over a period of almost fifteen years and their defiant resistance of all efforts to seek their compliance therewith. This wrong was adjudicated by this Court in the prior proceedings in this case. Defendants had every opportunity, most of which they took, to raise and litigate to a conclusion every issue as to whether they were in violation of the Act. The Court heard the evidence and the arguments of the parties, adjudicated the result, and set in place the remedial plan it found to be clearly dictated by the evidence and the law. To now excuse these Defendants from that adjudicated result and afford them a "window of time"

to put 900,000 smolt, a new year-class of fish, into the water and prolong their ability, by at least several years, to pursue and perpetuate that wrong, as it was originally adjudicated, would itself be a wrong under the Act, whether done by a modification of the Order and Injunction or by a stay of its operation pending appeal.[3]

Further, Defendants' position that the Order and Injunction impermissibly bans stocking of salmonid fish of non-North American stock or genetic strain is without merit. First, that proposition is to be tested in the next instance in the now-pending appeal, and it is not for this Court to invade the province of the Court of Appeals to predict that it will reverse the very elements of the remedial plan that this Court has promulgated from the evidence and imposed. Second, the argument that the Clean Water Act does not authorize such a ban overlooks the fact that the escaping fish have been adjudicated in these cases to be "pollutants" under the Act, in part because of their effect upon wild strains of native salmon, a part of the environment protected by the Act. Finally, the argument is one that is here brought forth for the first time at this stage of this litigation. It was never asserted in any of the proceedings leading up to the Order and Injunction of the Court and is one that is, on copious authority, now *waived* because not so asserted.

The Court is not persuaded that promulgation of the MPDES permit in its present

---

**3.** The Supreme Court has noted that a modification of a decree for changed circumstances is not warranted in all circumstances. *Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367, 383, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). "Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time . . . ." of the entry of the decree. *Id.* at 385, 112 S.Ct. 748. Here, the eventual promulgation of an MPDES permit and regulation by BEP was anticipated by everyone, if

only by force of this Court's adjudication in this litigation. Thus, there exists a viable basis to contest the validity of Defendants' assertion that the Court's Order and Injunction will be modified so as not to override the permit. The extent of such modification, if in fact it is ever required, is itself in issue. Finally, the existing challenge to the validity of the MPDES permit under state law leaves it far from assured that the permitting regimen contemplated by the regulation will ever be effectively implemented.

challenged status, or otherwise, establishes a likelihood that Defendants will succeed on the merits of their appeal.

## 2. Irreparable harm to Defendants.

■ Defendants' assertion of irreparable harm has pervaded this entire litigation as a pleading mantra of strategic desperation. The Court has on prior occasions in the litigation considered and decided the persuasiveness and effect of this assertion and cannot improve on its assessment made at the time of its denial of a stay for purposes of Defendants' improvident prior appeal of the Court's Opinion and Order for Civil Contempt (Docket Item No. 97). This Court there stated:

> Throughout the fifteen-year-long history of ASM's participation in the regulatory process and in this case, ASM has apparently been unable to accept that the core issue in this case is not its economic well-being and future profitable operation. The core issue, which ASM has continuously minimized or evaded, is whether ASM is required to conduct its operations in compliance with the requirements of the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.* and, now, how that ASM is to be required to do so.

> It is the Court's perception that ASM's leadership has single-mindedly pursued a policy, in the interests of the company's economic well-being and future profitability, of frustrating the fruition of all efforts by the regulatory authorities, such as they have been, and by this Court to secure and ensure its compliance with the Act. This is most recently tellingly demonstrated by its filing on May 11, 2003, of Defendant's Motion for Relief from Judgment (Docket No. 105) seeking to be relieved of this Court's Opinion and Order of May 9, 2003, (Docket Item No. 97) holding ASM in civil contempt of its Order of February 13, 2003, again strenuously asserting a right to be exempted from the requirements of the Act on the sole basis of its own economic exigency. That exigency is largely the result, in the view of the Court, of ASM's determined insistence that its economic well-being *will* prevail over its environmental responsibilities under the Act. It has pursued the growing and stocking of the fish now in question entirely for the purpose of creating that exigency and thereby exerting pressure on the agencies and this Court to accomplish that result.

> The Court does not believe that ASM has ever accepted in the past, or that it does now accept, the proposition that its economic performance is trumped by its duty to operate in compliance with the congressional mandate that it comply with the requirements of the Act and the rulings and orders of this Court aimed at securing its compliance. There is little prospect that it will *ever* voluntarily do so.

Order Denying Defendants' Motion to Stay Order Pending Appeal (Docket Item No. 108) at 3 n. 1.

## 3 and 4. Weighing the harms and furtherance of the public interest.

■ The Court finds that the granting of a stay to afford Defendants their "window of time" to get a new year-class of fish into the water will inflict an enormous harm upon the interests of Plaintiffs and the environment they seek by this litigation to protect by prolonging the implementation of the Court's remedial plan to stop, correct, and reverse the effects of Defendants' years-long violation of the Act. The consequence of such a stay vastly outweighs what little merit there is to Defendants' claims of economic damage.

No public interest will be served in any positive way by granting the stay. The evidence in this case clearly demonstrated to this Court that Defendants have defiantly pursued a long course of conduct inflicting substantial and mounting damage of a most substantial nature upon those elements of the environment within the protection of the Act and have done so in defiance of the Act. It concluded that the legitimate requirements of the Act demanded that their conduct cease and, perhaps more importantly, that it cease *forthwith* and in important specific respects. Those determinations were made on an evidentiary record that supported them in a most compelling manner.

The public, the public interests, and the Congress of the United States, not to mention the other litigants herein, have a cogent, discrete, and compelling need to have those judicial proscriptions upon Defendants' conduct, as articulated in the Court's Order and Injunction herein, go forward without delay.

So **ORDERED**.